Merrimack, } No. 3789.
Mar. 1, 1949. }

HARRY J. WELCH *v.* ROBERT BRUCE COLEMAN.

*Willoughby A. Colby* (by brief and orally), for the plaintiff.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant.

BLANDIN, J.   The Court has found that the plaintiff failed to perform his part of the contract and misappropriated $3,775 of the defendant's funds in the course of their short and unhappy association. The gist of the defendant's claim, as set forth in his brief, is that he, a naive newspaper man from New York City was completely bam-

boozled and swindled out of substantial sums of money by the native plaintiff. The Court's findings support this claim and the record supports the findings. It abounds in correspondence between the parties and discloses evidence that the defendant became convinced, with the aid of the plaintiff, that he could make his fortune out of dubious mica mines and that this fortune would be augmented by the profits to be realized from his pigs, sheep and cows grazing on cut over land with ginseng and Russian rubber plants growing beside them. In addition to this there is a suggestion in one of the plaintiff's letters that should the defendant come to New Hampshire his experience as a dramatic critic in New York ought not to be lost to the world but should enable him to run a moving picture theatre in some small town, as a side issue to his mining and farming activities, which would be "the pride of the community." There is also evidence to justify the Court's finding that the defendant trusted the plaintiff completely as shown by such expressions from the defendant regarding the plaintiff as, "your consideration for my interests means more to me than I can tell you. It is a pleasure to do business with one so honorable."

It seems unnecessary to review the correspondence in much further detail although it contains intimations of other profitable uses which the plaintiff might find for his time and his property, none of which materialized.

Turning to the plaintiff's exceptions we find the first relates to the late filing of the defendant's brief statement which the plaintiff claims was contrary to Superior Court Rule 21 and unjustified on any grounds. It is of course discretionary with the Court to waive its own rule relative to the filing of such statements within sixty days of the commencement of an action. The defendant claimed his delay was due to the failure of the plaintiff to seasonably produce his books and records in accordance with the Court's order and the record sustains this claim. Our courts do not ordinarily compel parties to bring two actions when their rights may be conveniently settled in one, and in the absence of any abuse of discretion the allowance of the defendant's brief statement, was proper. *Johnson* v. *Association*, 68 N. H. 437. See also, *Lovejoy* v. *Ashworth*, 94 N. H. 8.

The defendant testified under examination by plaintiff's counsel, with reference to his purchase of the Hoyt Hill and Columbia Gem mines, "Mr. Welch represented me." He further stated that he gave Welch the money to buy these mines and the Baer mine also; that Welch "bought me the mine" (i.e. the Baer mine) and that he relied upon the plaintiff to handle all these transactions for him. The

plaintiff himself admitted that the defendant gave him the purchase price for the Baer mine "to pay over to the owners." There was, therefore, evidence to support the Court's finding that the plaintiff represented the defendant in the purchase of these mines and the plaintiff's contention that it was unwarranted fails.

The plaintiff claims the right to recover in *quantum meruit* since no profits, from which he was to receive his pay under the contract, were realized. The difficulty with his position is that he is faced with a sustainable finding, in effect, that he is in wilful default and there is no finding, nor evidence to support one, that he conferred any benefits upon the defendant. Under these circumstances the denial of recovery by the plaintiff was proper. *Britton* v. *Turner*, 6 N. H. 481; *Horn* v. *Batchelder*, 41 N. H. 86, 90; *Stanley* v. *Kimball*, 80 N. H. 431, 435, 436; Restatement, Contracts, *s.* 357. See also, *Lemire* v. *Haley*, 93 N. H. 206, 207; *Boyle* v. *Dudley*, 87 N. H. 282, 288; *Southern* v. *Kittredge*, 85 N. H. 307, 309; *Roundy* v. *Thatcher*, 49 N. H. 526, 530.

The plaintiff's exception to the finding and ruling to the effect that he withdrew $600 from the defendant's account from the Suncook bank and fraudulently converted it to his or his wife's use cannot be sustained. Out of the fog of confusion enveloping much of the circumstances surrounding this portion of the dispute salient facts stand forth. One is that the defendant sent the plaintiff $1,000 which was deposited in the Suncook bank to the credit of "Coleman Mining Company." The defendant also stated that he gave the plaintiff $600 in addition to this for the purchase of a compressor which turned out to be worthless, except for scrap, although the plaintiff told the defendant it was in "A 1 condition." The defendant's wife admitted she went to the Suncook bank with a Miss Coleman, who worked for the plaintiff, to identify her, and that she, Mrs. Welch, endorsed a $600 check dated June 16, 1942 payable to cash and signed by her husband, whereupon the bank gave the money, which was later used to purchase the compressor, to Miss Coleman. The latter testified in effect that she remembered no such incident and could conceive of no reason why Mrs. Welch should have to identify her as her signature was well known at the bank. The Court was at liberty to believe or reject what he wished of the above and other pertinent testimony. Considering all the circumstances, and the strong indications of fraud on the part of the plaintiff which ran throughout the case, it cannot be said that there was no evidence before the Court to warrant the inference and finding thereon of which the plaintiff complains.

In addition to the $600 the Court found upon sufficient evidence

that the plaintiff fraudulently retained $3,175 of the money which the defendant sent him to purchase the mines. The plaintiff, as agent, having converted a total of $3,775 of his principal's funds, the verdict for the latter in this amount was proper. 3 C. J. S., Agency, s. 192; Restatement, Agency, ss. 387, 388, 389, 391, *Comment d*, 2, 407; *Parsons* v. *Merrill*, 59 N. H. 227; *Concord Railroad* v. *Clough*, 49 N. H. 257.

The plaintiff next contends that the Court's finding that the defendant invested $3,000 to $4,000 to get the mines into operation without result is erroneous, in that the record discloses only $2,010 so invested. The plaintiff does not include in his computation the $600 which the Court found the defendant sent for this purpose, nor does he consider the expense of the trips which the defendant made from New York to Canaan, and vicinity. The defendant estimated he put in around $3,000 to $4,000 and added that every time he received a letter from the plaintiff it said, "I spent some more of your money." It appears that the figure of $3,000 to $4,000 was reasonably accurate and furnishes no ground for a reversal.

Nor can the plaintiff prevail on his exception to the finding that he did not use "the degree of diligence and attention and skill adequate to the performance of his undertaking under the contract." The evidence is that one of the mines was never operated under the plaintiff's management and that nothing of appreciable value was taken out of the others. Numerous other businesses were engaging the plaintiff's attention and he spent much time conducting them. He was seldom at the mines and there is evidence that he merely walked around when there and could not tell "whether they were drilling right or not." He was a novice at the job, by his own admission, although he had represented to the defendant that he had experience. It appears there was evidence to warrant the Court's findings, and common sense furnished a sufficient guide for his conclusion without the need of testimony as to any standard of diligence and attention as suggested by the plaintiff. See *Dumas* v. *Hartford &c. Ind. Company*, 94 N. H. 484, 491.

We come now to the plaintiff's exception to the testimony of one Eastman that the Baer Hill properties were sold for taxes in the years 1931, 1937 and 1939 and that he and his son, as owners of the land and mining rights respectively of these mines, received $1,300 from the sale of them to one Smith at whose request deeds were made directly to the defendant. In view of the plaintiff's experience in real estate transactions it is a fair inference that he had checked the title to these

properties before the transfer and accordingly knew of tax sales, the recital of which were in the deeds. This evidence had a bearing on his knowledge of the true value of the mines and hence was competent on the issue of fraud. The record discloses that the plaintiff was working closely with Smith and was splitting with him, to a degree at least, the excess of what he received from the defendant for these mines above what the Eastmans were paid for their holdings. Again it is a fair inference that the plaintiff in driving his bargain with Smith learned what the latter actually paid the Eastmans. This evidence too was admissible on the question of fraud and the plaintiff's general exception to this line of testimony fails. *Menard* v. *Cashman*, 94 N. H. 428, 432, and cases cited; *Smith* v. *Railroad*, 87 N. H. 246; 1 Hening's Digest 681.

The plaintiff next calls attention to what is clearly an error in the record with respect to the inclusion, by number, of plaintiff's request for ruling of law number 3 among the requests denied by the Court. The latter granted the plaintiff's request for finding of fact number 7 expressly, and also in his general findings. This was identical in effect, and quotes almost verbatim the plaintiff's request for ruling of law number 3. Obviously the Court viewed this situation favorably to the plaintiff and in accordance with his request, therefore, no prejudice appears. Lastly the plaintiff calls attention to alleged errors in statements of fact in the defendant's brief. These have all been examined and found either not to be errors or immaterial. In neither event have they prejudiced the plaintiff's case. The order, therefore, is

*Judgment on the verdicts.*

DUNCAN, J., did not sit: the others concurred.